IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY D. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-3357-CV-S-RED |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Gary D. Ellis ("Ellis") seeks judicial review of the Commissioner's denial of his request for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, as amended.. Plaintiff has exhausted all of his administrative remedies, and judicial review is now appropriate. After carefully reviewing the record, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").[1]

### I. Background

The parties present complete facts and arguments in their briefs. The ALJ's decision also sets forth comprehensive findings of fact and conclusions of law. The parties' facts and arguments and the ALJ's findings and conclusions are repeated herein only as necessary to explain the Court's decision.

### II. Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands

of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that he is disabled. If the claimant is not able to perform his past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

### III. Analysis

The ALJ determined that Ellis is not engaging in substantial gainful activity, he is severely impaired, his impairment is not comparable to a listed impairment, and he retains the RFC to perform the full range of light work. Ellis argues that (1) the ALJ failed to use a vocational expert, (2) the ALJ did not properly develop the record, (3) the ALJ's RFC determination is not supported by substantial evidence on the record as a whole, and (4) the ALJ did not properly evaluate the medical evidence.

#### A. The ALJ Was Not Required to Use a Vocational Expert

The ALJ determined that Ellis retained the capacity to perform the full range of light work and that Ellis did not suffer from any nonexertional limitations. The parties agree that if the ALJ's finding is correct, no vocational expert testimony was required, and the ALJ could instead rely exclusively on the grids. Ellis claims, however, that he suffered from nonexertional limitations, and the ALJ was incorrect in finding otherwise. Ellis claimed to suffer from pain and impairments

affecting his ability to use his upper body and right hand.

The ALJ properly discounted Ellis's subjective complaints about these limitations. The ALJ noted that Ellis's subjective complaints were not supported by the medical evidence, that Ellis has not had regular and sustained treatment, that Ellis's work and earnings history is poor, and that Ellis's explanations regarding his failure to work were vague. The ALJ specifically states in his decision that he considered all of the *Polaski* factors.

Moreover, the ALJ's finding that Ellis did not suffer right-hand and upper body limitations is supported by the objective medical evidence. Dr. Buvat noted that Ellis had 5/5 bilateral grip strength, full range of motion of the wrists, and he could extend the hands, make a fist, and oppose his fingers. Dr. Carson noted some limitations with the right hand and upper body, but recommended further examination because the initial exam was "unusual." Dr. Koonce noticed no swelling or discoloration of Ellis's hands, but he did notice "strange blister like lesions on the palms of both hands." Ellis incredibly attributed the lesions to "swelling."

The ALJ's finding that Ellis did not suffer from nonexertional limitation due to pain is also supported by the objective medical evidence. The medical experts noted that Ellis appeared to exaggerate his pain, and he showed more signs of lack of motivation than sincere pain. Dr. Koonce noted that Ellis acted as if he were in pain during the observation, but he was able to dress and undress for the examination in less than one minute, and he did not show any signs of pain when going to his car, opening the door, and sitting inside.

The ALJ properly determined that Ellis did not suffer from nonexertional limitations. Accordingly, the ALJ was not required to rely on the opinions of a vocational expert, and he could rely exclusively on the grids.

## B. The ALJ Properly Developed the Record.

Ellis claims that the ALJ "den[ied] Plaintiff the opportunity to explain why he is unable to work," and then discredited Ellis's subjective complaints because "the claimant was very vague as to why he could not work." Ellis also claims that the ALJ interrupted him throughout his testimony.

The Court notes that Ellis was represented by counsel at the hearing, and counsel was free to ask any questions of Ellis he thought were necessary to support Ellis's claims or object to the manner of the ALJ's questioning at the hearing. The Court recognizes, however, that the ALJ has the "duty to develop the record fully and fairly, even where, as here, the claimant is represented by counsel." *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000).

The Court has reviewed the transcript of the hearing. The ALJ's examination of Ellis was brief, but it was sufficient to develop an adequate record to evaluate Ellis's claims and to make a determination of disability. Moreover, throughout the hearing the ALJ gave Ellis multiple opportunities to more specifically describe his impairments and explain why he is unable to work. When asked for more specificity regarding the conditions that he claimed kept him from working, Ellis's explanations ranged from "I have no idea, Your Honor" to "I don't know, Your Honor." The hearing was brief because Ellis could not or would not give more forthcoming responses to the ALJ's questions about his subjective complaints and alleged impairments.

The ALJ has a duty to develop the record, but the record consists of more than just Ellis's testimony at the hearing. 42 U.S.C. § 405(g) (record includes all "evidence upon which the findings and decision complained of are based"). The medical records in the case also contain detailed descriptions of Ellis's subjective complaints, and they include exhaustive analysis of Ellis's alleged impairments by medical experts . The ALJ recited the vagueness of Ellis's explanations as only one

of many reasons he discredited Ellis's subjective complaints. The remaining reasons cited by the ALJ—including the objective medical evidence that detract heavily from Ellis's subjective complaints—were more than sufficient to discredit Ellis and support a determination of no disability.

### C. The ALJ's RFC Determination is Supported by Substantial Evidence.

The ALJ determined that Ellis "has the residual functional capacity to perform the physical exertion requirements of standing and walking for up to six hours in a workday, sitting throughout a work day, occasionally lifting up to 20 pounds, and frequently lifting up to ten pounds. The claimant has the ability to perform a full range of light work. There are no nonexertional limitations." For the reasons described in subsection III(A) of this order, the ALJ's finding that Ellis did not suffer from nonexertional limitations is supported by substantial evidence on the record as a whole.

The ALJ's RFC determination is also supported by substantial evidence. Dr. Buvat reported that Ellis had the exact RFC that the ALJ found Ellis to have. While Dr. Buvat stated reported that Ellis was suited only for sedentary work, his report also indicated that Ellis retained the capacity to perform the full range of light work. The ALJ properly relied upon Dr. Buvat's conclusions as a medical doctor regarding Ellis's actual physical limitations instead of relying on Dr. Buvat's unsupported opinions regarding Ellis's specific vocational capabilities. It is also worth noting that no treating physicians provided medical evidence in this case. Accordingly, the ALJ was not required to discredit a treating physician's medical reports to rely on the findings of Dr. Buvat, a consulting physician.

The ALJ's RFC determination is supported by substantial evidence on the record as a whole.

### D. The ALJ Properly Evaluated All of the Medical Evidence

The ALJ's decision describes at length the medical evidence from three sources, Dr. Buvat, Dr. Carson, and Dr. Koonce. The decision makes it clear that the ALJ evaluated all available medical evidence in arriving at his conclusion.

Ellis argues, however, that the ALJ's decision fails to address the records from Department of Corrections physicians that evaluated Ellis while he was incarcerated. The Court notes that the medical reports from the DOC physicians are in the record, and the fact that the ALJ did not mention the records in his decision does not mean that he did not evaluate those records in arriving at his conclusion. It appears that the ALJ reviewed and evaluated all of the medical evidence in the record because he refers to the medical evidence, in general, throughout the decision.

The Court also notes that the DOC records, on the whole, support the ALJ's finding, and even if the ALJ failed to evaluate them, they would not change his decision. The records indicate that Ellis was "awake, alert, oriented . . . sitting up in chair in room writing a letter." "Offered no complaints of discomfort." "Up and about within his cell with steady gait." "Offender left TCU fully ambulatory." "Complains of back pain, but no physical signs of same." "Apparently the records of his previous surgery and back care are lost in the mists of time." The Court notes that the DOC records show Ellis intermittently complained about back pain, usually when he needed a "lay-in" or doctor's permission not to perform chores in prison. At best, the records show that Ellis's complaints are inconsistent, and the records detract from his credibility. At worst, the records provide additional objective medical evidence that Ellis is not disabled. The ALJ did not err by failing to expressly address the DOC records in his decision.

Ellis also argues that the ALJ failed to state in his decision the weight he gave to each medical source. However, the Eighth Circuit has recently clarified that the ALJ need not identify

-7-

Case 6:06-cv-03357-RED   Document 10   Filed 02/06/08   Page 7 of 8

the weight he gave to each medical opinion in reaching his decision. *Hepp v. Astrue*, — F.3d —, 2008 WL 60134, *6 (8th Cir. January 7, 2008).

## IV. Conclusion

Upon review of the record, the Court finds that substantial evidence on the record as a whole supports the ALJ's findings in this case. Accordingly, it is hereby

ORDERED that the decision of the ALJ is AFFIRMED.

**IT IS SO ORDERED**.

DATE:    February 5, 2008         */s/ Richard E. Dorr*
                                                        RICHARD E. DORR, JUDGE
                                                        UNITED STATES DISTRICT COURT